IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF PUERTO RICO

| | |
|---|---|
| NATALIE IVETTE MELENDEZ ORTIZ; LAURA NICOLE SANTIAGO MELENDEZ; ALANNIE MICHELLE SANTIAGO MELENDEZ; ALVIN ELIUD SANTIAGO MELENDEZ; DAVIDA SERRANO SALAZAR; DAVID SERRANO SALAZAR AND LAURA MARIA SERRANO ORTIZ<br><br>    Plaintiffs<br><br>    vs<br><br>DR. PEDRO J. COLON HERNANDEZ, his wife DAPHNE COLON DORDAL and the CONJUGAL PARTNERSHIP constituted between them; DR. ELIZARDO MATOS CRUZ, his wife JANE ROE and the CONJUGAL PARTNERSHIP constituted between them; HOSPITAL GENERAL MENONITA, INC. d/b/a HOSPITAL MENONITA DE CAYEY; CAGUAS CARDIO CENTER PSC; SINDICATO DE ASEGURADORES PARA LA SUSCRIPCION CONJUNTA DE SEGUROS DE RESPONSABILIDAD MEDICO HOSPITALARIA (SIMED); PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY; TRIPLE S PROPIEDAD, INC.; ASPEN AMERICAN INSURANCE COMPANY; THE MEDICAL PROTECTIVE COMPANY (MEDPRO); XYZ INSURANCE COMPANIES; JOHN DOE AND RICHARD ROE; XYZ ENTITIES; XYZ COMPANIES<br><br>    Defendants | CIVIL NO.<br><br>SUBJECT:<br><br>MEDICAL MALPRACTICE, DAMAGES<br><br>PLAINTIFF REQUESTS JURY TRIAL |

**COMPLAINT**

TO THE HONORABLE COURT:

**COMES NOW**, plaintiffs Natalie Ivette Meléndez Ortiz, Laura Nicole Santiago Meléndez, Alannie Michelle Santiago Meléndez, Alvin Eliud Santiago Meléndez, Davida Serrano Salazar, David Serrano Salazar and Laura María Serrano Ortiz, through the undersigned attorney, and respectfully SETS FORTH and PRAYS:

**JURISDICTION OF THE COURT**

1. This is an action for medical malpractice and damages. The jurisdiction of this Honorable Court is predicated on the diversity of citizenship of the parties under the provisions of 28 U.S.C. §1332 insofar plaintiffs are citizens of the states of Florida, South Carolina, Texas, California, New Jersey and New York, and the individual defendants DR. PEDRO J. COLON HERNANDEZ, his wife DAPHNE COLON DORDAL and the CONJUGAL PARTNERSHIP constituted between them; DR. ELIZARDO MATOS CRUZ, his wife JANE ROE and the CONJUGAL PARTNERSHIP constituted between them; HOSPITAL GENERAL MENONITA, INC. d/b/a HOSPITAL MENONITA DE CAYEY; CAGUAS CARDIO CENTER, PSC; SINDICATO DE ASEGURADORES PARA LA SUSCRIPCION CONJUNTA DE SEGUROS DE RESPONSABILIDAD MEDICO HOSPITALARIA (SIMED); PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY; TRIPLE S PROPIEDAD, INC.; ASPEN AMERICAN INSURANCE COMPANY; THE MEDICAL PROTECTIVE COMPANY (MEDPRO); XYZ INSURANCE COMPANIES; JOHN DOE AND RICHARD ROE; XYZ ENTITIES; XYZ COMPANIES are citizens of the Commonwealth of Puerto Rico, and/or states other than Florida, South Carolina, Texas, California, New Jersey and New York, and/or corporations and/or other entities organized and existing under the laws of the Commonwealth of Puerto Rico, and/or states other than Florida, South Carolina, Texas, California, New Jersey and New York, with their principal place of business in the Commonwealth of Puerto Rico, and/or states other than Florida, South Carolina, Texas, California, New Jersey and New York. The plaintiffs therefore request jury trial.

2. Venue is proper as the acts giving rise to this action occurred in the Commonwealth of Puerto Rico, and defendants do business in Puerto Rico.

**THE PARTIES**

3. The allegations contained in paragraphs 1 through 2 of the Complaint are incorporated herein as if fully set forth at length herein.

4. Plaintiff Natalie Meléndez Ortiz (hereinafter, "Natalie") is of legal age, married, resident of the state of Florida, and daughter of the deceased Laura Elena Ortiz Burgos (hereinafter, "Laura Elena").

5. Plaintiff Laura Nicole Santiago Meléndez (hereinafter, "Laura Nicole") is of legal age, married, resident of the state of South Carolina, and granddaughter of the deceased Laura Elena.

6. Plaintiff Alannie Michelle Santiago Meléndez (hereinafter, "Alannie") is of legal age, married, resident of the state of Texas, and granddaughter of the deceased Laura Elena.

7. Plaintiff Alvin Eliud Santiago Meléndez (hereinafter, "Alvin") is of legal age, single, resident of the state of California, and grandson of the deceased Laura Elena.

8. Plaintiff Davida Serrano Salazar (hereinafter, "Davida") is of legal age, single, resident of the state of New Jersey, and granddaughter of the deceased Laura Elena.

9. Plaintiff David Serrano Salazar (hereinafter, "David") is of legal age, married, resident of the state of New York, and grandson of the deceased Laura Elena.

10. Plaintiff Laura María Serrano Ortiz (hereinafter, "Laura María") is of legal age, married, resident of the state of Texas, and granddaughter of the deceased Laura Elena.

11. At all times material hereto, defendant Dr. Pedro J. Colón Hernández (hereinafter "Dr. Colón") was, and still is, a physician specialized in interventional cardiology, duly authorized to practice medicine in the Commonwealth of Puerto Rico.

12. At all times material hereto, defendant Dr. Colón had and still has a conjugal partnership constituted with his wife Daphne Colón Dordal.

13. At all times material hereto, defendant Dr. Elizardo Matos Cruz (hereinafter, "Dr. Matos") was, and still is, a physician specialized in cardiovascular surgery, duly authorized to practice medicine in the Commonwealth of Puerto Rico.

14. At all times material hereto, defendant Dr. Matos had and still has a conjugal partnership constituted with his wife Jane Roe, whose true identity is unknown at this time.

15. At all times material hereto, defendant Hospital General Menonita, Inc. d/b/a Hospital Menonita de Cayey (hereinafter, "the Hospital") was, and still is, a medical institution duly organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Cayey, Puerto Rico.

16. At all times material hereto, defendant Caguas Cardio Center, PSC (hereinafter, "the Center") was, and still is, a professional services corporation duly organized and existing under the laws of the Commonwealth of Puerto Rico under which defendant Dr. Colón provided medical care to the deceased Laura Elena.

17. At all times material hereto, defendant Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Médico Hospitalaria (SIMED) was and still is a company or entity duly organized and existing under the laws of the Commonwealth of Puerto Rico engaged in the insurance business, who issued one or more insurance policies to some or all of the defendants in this case providing coverage for facts such as the ones alleged in this Complaint, and which were in full force and effect.

18. At all times material hereto, defendant Puerto Rico Medical Defense Insurance Company (PRMDIC) was and still is a company or entity duly organized and existing under the laws of the Commonwealth of Puerto Rico engaged in the insurance business, who issued one or more insurance policies to some or all of the defendants in this case providing coverage for facts such as the ones alleged in this Complaint, and which were in full force and effect.

19. At all times material hereto, defendant Triple S Propiedad, Inc. was and still is a company or entity duly organized and existing under the laws of the Commonwealth of Puerto Rico engaged in the insurance business, who issued one or more insurance policies to some or all of the defendants in this case providing coverage for facts such as the ones alleged in this Complaint, and which were in full force and effect.

20. At all times material hereto, defendant Aspen American Insurance Company (ASPEN) was and still is a company or entity duly organized and existing under the laws of the Commonwealth of Puerto Rico engaged in the insurance business, who issued one or more insurance policies to some or all of the defendants in this case providing coverage for facts such as the ones alleged in this Complaint, and which were in full force and effect.

21. At all times material hereto, defendant The Medical Protective Company (MEDPRO) was and still is a company or entity duly organized and existing under the laws of the Commonwealth of Puerto Rico engaged in the insurance business, who issued one or more insurance policies to some or all of the defendants in this case providing coverage for facts such as the ones alleged in this Complaint, and which were in full force and effect.

22. At all times material hereto, defendants XYZ Insurance Companies are one or more insurance companies or entities engaged in the insurance business, who had issued one or more insurance policies to some or all of the defendants in this case providing coverage for facts such as the ones alleged in this Complaint, whose true identities are unknown at this time.

23. John Doe and Richard Roe are the fictitious names of any and all persons who may be responsible to the plaintiffs for the facts alleged in this Complaint, whose true identities are unknown at this time.

24. XYZ ENTITIES are the fictitious names of any and all partnerships and/or entities of any kind under which medical services were provided to the deceased by the

defendant doctors and that may be responsible to the plaintiffs for the facts alleged in this Complaint, whose true identities are unknown at this time.

24. XYZ COMPANIES are the fictitious names of any and all legal entities that may be responsible to the plaintiffs for the facts alleged in this Complaint, whose true identities are unknown at this time.

26. SIMED, PRMDIC, Triple S, ASPEN, MEDPRO and XYZ INSURANCE COMPANIES are directly and jointly liable to the plaintiff under the provisions of the Puerto Rico Insurance Code for the performance and satisfaction of the relief hereinafter sought.

27. The spouses and the conjugal partnerships of the physicians sued, as well as the Center are jointly liable to the plaintiffs for the facts alleged in this Complaint, as they received benefits of the negligent acts and/or omissions of such defendants.

28. Upon information and belief, on or before June 28, 2023, Dr. Colón had been sued for medical malpractice.

29. Upon information and belief, on or before June 28, 2023, Dr. Matos had been sued for medical malpractice.

30. Upon information and belief, on or before June 28, 2023, the Hospital had been sued for medical malpractice.

31. Upon information and belief, on or before June 28, 2023, the Hospital knew that Dr. Colón had been sued for medical malpractice.

32. Upon information and belief, on or before June 28, 2023, the Hospital knew that Dr. Matos had been sued for medical malpractice.

33. Upon information and belief, on or before June 28, 2023, the Center had been sued for medical malpractice.

34. Upon information and belief, on or before June 28, 2023, the Center knew that Dr. Colón had been sued for medical malpractice.

**FACTS**

35. The allegations contained in paragraphs 1 through 34 of the Complaint are incorporated herein as if fully set forth at length herein.

36. On May 16, 2023, Laura Elena, who was 81 years old at that time, visited cardiologist Dr. Henry Díaz Díaz to obtain preoperative authorization for a scheduled shoulder replacement surgery.

37. After examining her, Dr. Díaz referred Laura Elena to the office of defendant Dr. Colón, an interventional cardiologist, for evaluation regarding the possible performance of a transcatheter aortic valve replacement (hereinafter "TAVR"), since he determined that the patient had severe aortic valve stenosis.

38. Thus, on May 26, 2023, Laura Elena visited Dr. Colón's office for the first time, where he recommended cardiac catheterization and a computed tomography angiography to complete the assessment for the potential TAVR procedure.

39. On June 12, 2023, Laura Elena underwent a cardiac catheterization, along with an echocardiogram and a computed tomography angiography.

40. On June 15, 2023, Laura Elena returned to Dr. Colón's office to discuss the results of the studies and procedures performed.

41. During this visit, Dr. Colón recommended to Laura Elena that she undergo the TAVR.

42. On June 21, 2023, defendant Dr. Matos evaluated Laura Elena and also recommended the TAVR.

43. As part of the TAVR procedure scheduled for June 28, 2023, Laura Elena was also to undergo a transesophageal echocardiogram (TEE).

44. On June 28, 2023, Laura Elena was admitted to the hospital for the purpose of undergoing the TAVR and the TEE.

45. According to the medical records, on that day, Dr. Colón determined that the procedure could be performed.

46. Defendants Dr. Colón and Dr. Matos performed the TAVR and TEE procedures, with Dr. Colón as the lead surgeon and Dr. Matos as the second surgeon.

47. According to the operative report, the procedure reportedly underwent without apparent complications.

48. However, according to the medical records, during the implantation of the transcatheter valve, it migrated and there was a paravalvular leak.

49. As a result, a second transcatheter valve was implanted.

50. According to the anesthesia record, during the implantation of the second transcatheter valve, the patient began to experience severe hypotension, and eventually suffered a cardiac arrest.

51. However, according to the death note made by Dr. Colón, it was allegedly after the procedure was completed and while the hospital staff was preparing Laura Elena for transfer to the recovery area that she developed hypotension and suffered a cardiorespiratory arrest.

52. According to the medical records, Laura Elena died from cardiovascular collapse.

## NEGLIGENCE

53. The allegations contained in paragraphs 1 through 52 of the Complaint are incorporated herein as if fully set forth at length herein.

54. The defendants, Dr. Colón and Dr. Matos, incurred in negligence and medical malpractice by not providing adequate medical attention to the deceased Laura Elena, by not identifying, managing and/or treating the condition that she presented, by not giving her the care required by her condition, by performing procedures that were unnecessary and incorrect for her as a patient, by failing to perform an adequate preoperatory evaluation and failing to obtain the necessary informed consent required for the TAVR, by performing a TAVR on the patient even when said procedure was not indicated for her, by failing to perform the TAVR procedure adequately and with the necessary expertise, by inadequately managing the placing of the transcatheter valves, by failing to adequately manage the conditions and/or complications that arose during the TAVR procedure, by not performing the necessary procedures or studies to adequately care for the patient's condition, by not taking into consideration the patient's clinical findings for her treatment, and by not having provided Mrs. Laura Elena with appropriate medical care, as required by the requirements generally recognized by the medical profession, among other actions and/or negligent and/or negligent omissions.

55. The defendants, Dr. Colón and Dr. Matos, incurred in negligence by performing the TAVR procedure on the patient inadequately and deficiently, with a lack of expertise, by inadequately managing the valves placement and by failing to adequately treat the conditions and/or complications that arose during the procedure, causing the patient to suffer severe hypotension and a cardiorespiratory arrest. They also neglected the patient's health before, during, and after surgery, among other negligent and/or tortious actions and/or omissions.

56. The defendants Dr. Colón and Dr. Matos also incurred in negligence by not having obtained an informed consent from the patient, by making a deficient and inadequate preoperative evaluation, by recommending the patient the performance of the TAVR despite Laura Elena's health conditions and by not having chosen the correct and appropriate surgical

procedures for a patient with the conditions presented by Laura Elena, among other among other negligent and/or tortious actions and/or omissions.

57. The Hospital incurred in negligence and medical malpractice, among others, due to the negligent and/or omissions of its employees, physicians, nursing staff and/or agents during the treatment provided to Laura Elena in the Hospital. The hospital through its employees, physicians, nursing staff and/or agents failed to ensure the health and safety of Laura Elena, by: (1) not making a cautious selection of the personnel that works there and granting privileges and/or hiring the defendant physicians to practice/or work in the institution; (2) not keeping a full, unaltered, and concise medical record; (3) not having and/or keeping the correct, necessary and complete equipment and/or medication to adequately care for the patient's condition; (4) failing to promptly and adequately treat the patient's condition once it arose; (5) failing to comply with their duties of monitoring, attention, supervision and care of the patient, (6) by not maintaining the necessary protocols to ensure the well-being of the patient and/or by not having complied with their established protocols (7) failing to provide adequate medical treatment and attention to the patient, and failing to give the patient the appropriate medical care according to the prevailing standard of care, among other negligent and/or tortious actions and/or omissions.

58. The Hospital also incurred in negligence and medical malpractice, among others, by granting privileges and/or hiring the defendant physicians to practice/or work in the institution; failing to require the personnel to take professional improvement training and to adequately supervise personnel by not keeping up of the work of said personnel; failing to intervene in an obvious act of medical malpractice and falling short on updates related to current technological developments to properly care for the patient's condition.

59. The medical and hospital personnel who treated Laura Elena at the hospital were negligent and incurred in medical and hospital malpractice by failing to provide said patient with

appropriate medical care as required by the requirements generally recognized by the medical profession.

60. The Center incurred in negligence because of Dr. Colón's negligent and/or tortious actions and/or omissions during the treatment that he provided to Laura Elena. The Center was also negligent by granting privileges and/or hiring Dr. Colón to practice/or work in said entity and by obtaining economic benefits from the negligent and/or tortious acts and/or omissions of Dr. Colón. Said entity incurred in negligence also by failing to provide the patient with appropriate medical care as required by the requirements generally recognized by the medical profession, among other negligent and/or tortious actions and/or omissions.

61. All defendants incurred in negligent acts and/or omissions that fall under medical malpractice, which were committed individually and/or jointly by each of them, among these, failing to provide adequate medical treatment and attention to the patient, and failing to give the patient the appropriate medical care according to the prevailing standard of care.

62. As a direct result of the negligent actions and/or omissions of the defendants, Laura Elena died without having received the attention and/or medical care necessary to treat her condition.

**DAMAGES**

63. The allegations contained in paragraphs 1 through 62 of the Complaint are incorporated herein as if fully set forth at length herein.

64. As a result of the negligent actions and/or omissions committed by the defendants, plaintiff Natalie, has suffered and is still suffering intense mental anguishes due to her mother's demise. She has suffered and is still suffering by thinking in the suffering and intense pain that her mother experienced before her death. She has also suffered and is still suffering for being deprived of her love, care, company, and protection, among others. Her

ability to enjoy life has also been significantly diminished. These damages are currently estimated in an amount no less than five hundred thousand dollars ($500,000.00).

65. As a result of the negligent actions and/or omissions committed by the defendants, plaintiffs Laura Nicole, Alannie, Alvin, Davida, David, and Laura María, who are Laura Elena's grandchildren, have suffered and are still suffering intense mental anguishes due to her demise. They have suffered and are still suffering by thinking in the suffering and intense pain that Laura Elena experienced before her death. They have also suffered and are still suffering for being deprived of her love, care, company, and protection, among others. Their ability to enjoy life has also been significantly diminished. These damages are currently estimated in an amount no less than two hundred and fifty thousand dollars ($250,000.00) for each one of them.

66. The damages suffered by plaintiffs were due to, only and exclusively, the negligence and medical malpractice of each and every one of the defendants, who failed to comply with medical treatment standards applicable to situations such as the one that occurred in this case, among other negligent and/or tortious acts and/or omissions, for which they are directly and jointly liable.

**WHEREFORE**, it is respectfully requested from the Honorable Court that judgment be entered in favor of plaintiffs, and against the defendants, jointly and severally, in the amounts set forth in the Complaint, plus the costs of this action, a reasonable amount of attorney's fees, and such other relief as this Honorable Court deems proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 26th day of June, 2024.

*Alicia M. Santos Irizarry Law Office*
802 Ave. San Patricio
Urb. Las Lomas
San Juan, Puerto Rico 00921
Tel. 787-963-0548 / Fax 787-963-0549
Email: *asantos@amsi-law.com*

S/Alicia M. Santos Irizarry
Alicia M. Santos Irizarry
USDC No. 222106